IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA JOYA, | No. C 07-4718 CRB |
| Plaintiff, | and related case |
| SALEY ALI, | No. C 07-04739 CRB |
| Plaintiff, | **ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| CITY OF HAYWARD, et al., | |
| Defendants. | |

  Maria Joya and Saleh Ali bring these related actions on behalf of the decedent, Nasir Solis. Solis was killed by a Hayward City police officer, Jason Corsolini, after an altercation outside a residence in Hayward. Defendants move for summary judgment on the grounds that (1) Jason Corsolini is entitled to qualified immunity, (2) there is no evidence supporting a Monell claim against the City of Hayward, (3) Corsolini's conduct did not "shock the conscience," as is required to establish a violation of substantive due process, (4) there is no evidence to support an Equal Protection Violation, (5) plaintiffs fail to provide evidence of racial animus as required by § 51.7 of the California Code, and (6) Corsolini is immune under California Penal Code § 196.

  For the reasons explained below, summary judgment is GRANTED as to the Monell

1 claim. However, for the reasons explained at the hearing, the motion is DENIED as to the
2 remaining claims.

### BACKGROUND

The parties disagree strenuously on the nature of events leading to Nasir Solis's death.

According to Defendants, Corsolini arrived at 168 Laurel Avenue in Hayward after hearing reports of gang activity in the area, and learning from Bryant Taylor that an individual named Nasir Solis had attacked him with an in-line skate wheel. Taylor Decl. ¶ 15.[1] When Corsolini arrived at 168 Laurel Avenue, he found N. Solis with Ben Mata, Mark Mata, and Alberto Solis (the decedent's brother). Corsolini observed N. Solis repeatedly hit A. Solis with a metal pipe. Corsolini then expanded his own baton and repeatedly commanded N. Solis to drop his weapon. N. Solis did not comply and instead charged Corsolini, holding the pipe in his right hand. Corsolini Depo. 78:17-20. Corsolini and N. Solis struggled with each other until Corsolini took the pipe from N. Solis and threw it away. Id. at 90:21-25. N. Solis then grabbed at the handle of Corsolini's gun, and Corsolini tried to prevent N. Solis from taking control of it. N. Solis then threatened to shoot Corsolini, until Corsolini was able to gain control of the gun and fire shots at N. Solis at point blank range. Id. 115:22-25, 118:24-119:17, 121:24-122:8. Even after this, the parties continued to struggle, and Corsolini again fired one or two shots at N. Solis's body. Finally Corsolini aimed the gun toward Solis's head and fired again. According to the autopsy, Solis was killed by a bullet that hit his neck.

Plaintiffs offer a very different version of events. They agree that N. Solis was at 168 Laurel St. on the day in question, but offer a different story as to the chain of events once Officer Corsolini arrived. According to deposition testimony of Mark Mata, Officer Corsolini arrived "and just started hitting Nasir, with no warning or anything. He just - - he was just hitting him, like in the head with his baton. He was hitting him, and he didn't even

---

[1] Plaintiffs dispute the admissibility of various defense affidavits. However, because Plaintiffs avoid summary judgment on the relevant claims even assuming the admissibility of this evidence, this Court need not reach the issue of admissibility. This Court's grant of summary judgment as to the Monell claim does not rely on any disputed evidence.

2

stop or nothing." Mata Depo. at 48. According to Mata, Solis then "gave up . . . and put his hand behind his back." Id. at 49. Despite this submission, according to Mata, Corsolini was then "on top of [Solis], and he was just shooting." Id. Other witnesses provided similar testimony. See, e.g., Solis Depo. 83:22-24; Borja Depo. 39:11-19, 49:3-44:17. According to these witnesses, N. Solis had dropped his stick when Corsolini arrived and had asked Corsolini to stop hitting him with the baton. However, these witnesses report that even after N. Solis surrendered, Corsolini shot him repeatedly. According to A. Solis's testimony: "my brother was on the ground, and he got on his knee, and then [Corsolini] shot him in the head five times." A. Solis Depo. at 58.

## DISCUSSION

**1.     Legal Standard**

A principal purpose of the summary judgment procedure is to isolate and dispose of factually unsupported claims. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). A party moving for summary judgment that does not have the ultimate burden of persuasion at trial (usually the defendant) has the initial burden of producing evidence negating an essential element of the non-moving party's claims *or* showing that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party does not satisfy its initial burden, the non-moving party has no obligation to produce anything and summary judgment must be denied. If, on the other hand, the moving party has satisfied its initial burden of production, then the non-moving party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial. Nissan Fire & Marine Ins. Co., 210 F.3d at 1102. A genuine issue of fact is one that could reasonably be resolved in favor of either party. A dispute is "material" only if it could affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

3

In determining whether to grant or deny summary judgment, it is not a court's task "to scour the record in search of a genuine issue of triable fact." Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996) (internal quotations omitted). Rather, a court is entitled to rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment. See id. However, "a conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." F.T.C. v. Publishing Clearing House, Inc., 104 F.3d 1168, 1171 (9th Cir. 1997).

**2.**     Plaintiffs' Monell Claim

Defendants ask this Court to grant summary judgment as to Plaintiffs' Monell claim. First, Defendants argue that because there was no underlying constitutional violation, there can be no Monell claim. See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986). Because there is an issue of material fact as to the underlying constitutional violation, this argument fails.

Next, Defendants argue that there is no evidence supporting a relevant city policy or practice that would lead to Monell liability. First, Defendants contend that there is no evidence that the City had a policy that exhibited deliberate indifference to the decedent's constitutional rights, and that there is no evidence that the policy was the "moving force" behind the violation of the decedent's rights. See City of Canton v. Harris, 489 U.S. 378, 389-91 (1989). Second, Defendants note that without evidence of such a plan, Plaintiffs must come forward with evidence of "a longstanding practice or custom which constitutes the standard operating procedure of the local government entity." Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996). This custom "must be so persistent and widespread that it constitutes a permanent and well settled city policy." Id. Moreover, "[l]iability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." Id.

Plaintiffs papers do not point this Court to evidence that meets this standard. Therefore, summary judgment as to the Monell claim must be granted. First, Plaintiffs

4

merely assert that their claim "is based in part on the allegations relating to the basis of Defendant Corsolini's decision to use excessive and unreasonable force against decedent Nasir Solis." Opp. at 19. However, as explained above, these allegations are insufficient to connect Corsolini's conduct to any plan or practice adopted by the city. Second, in an attempt to make this connection, Plaintiffs argue that their claim is based on the their assertion that Corsolini's decisions are "evidence of the failure of training and preparation by Defendants Chief Lowe, City of its officers [sic]." Id. at 20. However, Plaintiffs cite to no evidence of any failure on the part Chief Lowe or the City. Instead, Plaintiffs merely ask this Court to infer such a connection based solely upon evidence regarding Corsolini's conduct. This inference is plainly foreclosed by Ninth Circuit and Supreme Court authority. Plaintiffs have submitted no evidence regarding Corsolini's training, no evidence regarding the City's policy, and no evidence regarding any de facto policies of the City.

Plaintiffs' final attempt to meet this standard is their citation to the report submitted by police practice expert Roger Clark. That report includes the following assertion: "[t]he Hayward Police Department, through it's [sic] chain of command, appears to have endorsed the dangerous tactics by Officer Corsolini." Nisenbaum Decl. at 2. This conclusory statement is clearly inadmissible. Even assuming the expert is qualified to testify, Rule 702 of the Federal Rules of Evidence requires that expert testimony be "based upon sufficient facts or data." However, there is no indication in Clark's report that he ever reviewed Police Department policies. Hence, there can be no factual basis upon which his conclusion can be based. Instead, it is mere speculation, which is confirmed by the expert's statement that "it appears" that the city endorsed Corsolini's tactics. This is in no way evidence that the city had a plan or a practice that supports Monell liability, but merely reflects the expert's guess that, based on Corsolini's conduct, the City probably endorsed it. This cannot meet the standards discussed above.

Speculation, whether by an expert or a percipient witness, is not evidence. Guidroz-Brault v. Missouri Pacific R. Co., 254 F.3d 825, 829 (9th Cir. 2001) ("Rule 702 requires that expert testimony relate to scientific, technical, or other specialized knowledge, which does

5

not include unsupported speculation and subjective beliefs."). Because there must be a "factual basis for the expert's opinion," and because there is no evidence that Clark had such a factual basis, Plaintiffs are left with no evidence supporting a Monell claim.

Defendants' motion for summary judgment therefore must be granted as to the Monell claim. However, for the reasons explained at the hearing, the motion is DENIED as to the remaining claims.

**IT IS SO ORDERED.**

Dated: April 7, 2010

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE